UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE TETRA TECHNOLOGIES, INC. | ) | |
| SECURITIES LITIGATION | ) | Civil Action No. 4:08-CV-00965 |
| | ) | |
| | ) | JUDGE KEITH P. ELLISON |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL
OF CLASS ACTION SETTLEMENT, PLAN OF ALLOCATION, AND TO
CERTIFY A CLASS FOR SETTLEMENT PURPOSES**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT AND BACKGROUND .............................................................. 2

HISTORY OF THE LITIGATION ......................................................................................... 3

   A.  Background ......................................................................................................... 3

   B.  Procedural History of the Litigation ................................................................ 4

SUMMARY OF THE SETTLEMENT .................................................................................... 6

   A.  The Settlement .................................................................................................. 6

   B.  Plaintiff's Recovery Under the Settlement and Plan of Allocation ................. 6

CLASS CERTIFICATION ................................................................................................... 7

   A.  Numerosity ........................................................................................................ 8

   B.  Commonality .................................................................................................... 9

   C.  Typicality ....................................................................................................... 10

   D.  Adequacy ....................................................................................................... 10

   E.  The Proposed Class Satisfies the Requirements of Rule 23(b)(3) – Common Questions of Law Predominate and a Class Action Is Superior to Multiple Individual Actions ..... 11

      1.  Common Questions Predominate Over Any Questions Affecting Only Individual Members ........................................................................ 11

      2.  The Class Action Is Superior to Other Methods of Adjudication .............................. 12

THE PROPOSED SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL ................ 12

   A.  The Fifth Circuit Favors Settlement of Class Actions and Presumes Fairness of Settlements Negotiated and Supported by Experienced and Competent Counsel ........... 12

   B.  The Fifth Circuit's Six Factors for Evaluating Settlements Mandate Approval of This Settlement ........................................................................... 14

      1.  The Settlement Was Not the Product of Fraud or Collusion ...................................... 14

2.  The Complexity, Expense and Likely Duration of the Litigation All Support the Settlement .................................................................................................................. 15

3.  The Stage of Proceedings and Discovery Completed Gave the Parties Sufficient Information to Negotiate an Adequate and Reasonable Settlement .......................... 16

4.  The Probability of Success on the Merits, the Possible Range of Recovery and the Certainty of Damages, Support Approval of the Settlement ..................................... 17

5.  The Settlement Is an Excellent Result ...................................................................... 20

6.  Class Counsel, Class Representatives and Absent Class Members Support the Settlement .................................................................................................................. 20

THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE . 21

CONCLUSION ...................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prods, Inc. v. Windsor*,
 521 U.S. 591 (1997) ...................................................................................7, 10, 11

*Barrie v. Intervoice-Brite, Inc.*,
 No. 3:01-CV-1071-K, 2006 WL 2792199 (N.D. Tex. Sept. 26, 2006) ...........8, 10, 12

*Basic, Inc. v. Levinson*,
 485 U.S. 224 (1988) ..........................................................................................11, 12

*Batchelder v. Kerr-McGee Corp.*,
 246 F. Supp. 2d 525 (N.D. Miss. 2003) ...................................................................21

*City Partnership Co. v. Jones Intercable, Inc.*,
 213 F.R.D. 576 (D. Colo. 2002) ................................................................................8

*Clark v. Lomas & Nettleton Fin. Corp.*,
 79 F.R.D. 641 (N.D. Tex. 1978) ..............................................................................15

*Cotton v. Hinton*,
 559 F.2d 1326 (5th Cir. 1977) .................................................................................13

*Flinn v. FMC Corp.*,
 528 F.2d 1169 (4th Cir. 1975) .................................................................................13

*Forbush v. J.C. Penny Co., Inc.*,
 994 F.2d 1101 (5th Cir. 1993) ...................................................................................9

*Garza v. Sporting Goods Properties, Inc.*,
 No. SA-93-CA-1082, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996) .........................18

*Gen. Tel. Co. of the Southwest v. Falcon*,
 457 U.S. 147 (1982) .................................................................................................10

*Gibb v. Delta Drilling Co.*,
 104 F.R.D. 59 (N.D. Tex. 1984) ..............................................................................12

*Greenberg v. Crossroads Sys., Inc.*,
 364 F.3d 657 (5th Cir. 2004) ...................................................................................12

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*,
 127 F. Supp. 2d 418 (S.D.N.Y. 2001) .....................................................................21

iii

*In re Chicken Antitrust Litig. Am. Poultry,*
    669 F.2d 228 (5th Cir. 1982) ...................................................................................21

*In re Corrugated Container Antitrust Litig.,*
    643 F.2d 195 (5th Cir. 1981), *aff'd,* 659 F.2d 1322 (5th Cir. 1981).....................13, 14, 16, 17

*In re Elec. Data Sys. Corp. Secs. Litig.,*
    226 F.R.D. 559 (E.D. Tex. 2005), *aff'd,* 429 F.3d 125 (5th Cir. 2005) ................................9, 10

*In re Enron Corp. Sec. and ERISA Litigations,*
    No. H-01-3624, 2003 WL 22494413 (S.D. Tex. July 24, 2003)..................................................7

*In re Firstplus Fin. Group, Inc. Sec. Litig.,*
    No. 3:98-CV-2551-M, 2002 WL 31415951 (N.D. Tex. Oct. 28, 2002) ................................9, 10

*In re Indep. Energy Holdings PLC Sec. Litig.,*
    No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y Sept. 29, 2003)....................................14, 21

*In re Initial Public Offering Sec. Litig.,*
    227 F.R.D. 65 (S.D.N.Y. 2004) ..................................................................................8

*In re Lease Oil Antitrust Litig.(No. II)*
    186 F.R.D. 403 (S.D. Tex. 1999)..........................................................................17, 20

*In re Universal Access, Inc. Sec. Litig.,*
    209 F.R.D. 379 (E.D. Tex. 2002) ...........................................................................10

*In re Warner Commc'ns. Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986)...................................19

*In re Zonagen, Inc. Secs. Litig,*
    322 F. Supp.2d 764 (S.D. Tex. 2003) ......................................................................19

*McNary v. Am. Sav. & Loan Ass'n,*
    76 F.R.D. 644 (N.D. Tex. 1977) ...............................................................................13

*Miller v. Republic Nat'l Life Ins. Co.,*
    559 F.2d 426 (5th Cir. 1977) ..................................................................................13

*Murillo v. Texas A&M Univ. Sys.,*
    921 F. Supp. 443 (S.D. Tex. 1996) ........................................................................13, 21

*Newby v. Enron,*
    394 F.3d 296 (5th Cir. 2004) ..................................................................................16

*Parker v. Anderson,*
    667 F.2d 1204 (5th Cir. 1982) .............................................................................14, 20

*Purdie v. Ace Cash Express, Inc.*,
    No. 3:01- CV-1754, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) ...............................13, 14

*Reed v. General Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ...............................................................................................14

*Schwartz v. TXU Corp.*,
    No. 3:02-cv-2243, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ..........................................18

*Sosna v. Iowa*,
    419 U.S. 393 (1975)...............................................................................................................10

*Streber v. Hunter*,
    221 F.3d 701 (5th Cir. 2000), *reh'g denied en banc*, 233 F.3d 576 (5th Cir. 2000) ...............19

*Strougo ex rel. Brazilian Equity Fund v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)....................................................................................15

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) .........................................................................................15

*U.S. v. Texas Educ. Agency*,
    679 F.2d 1104 (5th Cir. 1982) .......................................................................................13, 21

*Zeidman v. J. Ray McDermott & Co., Inc.*,
    651 F.2d 1030 (5th Cir. 1981) ................................................................................................9

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78...........................................................................................................................................1, 3

Federal Rules of Civil Procedure
    Rule 23 ..................................................................................................................................7, 8
    Rule 23(a).............................................................................................................................8, 12
    Rule 23(a)(1)............................................................................................................................8
    Rule 23(a)(2)........................................................................................................................9, 10
    Rule 23(a)(3)...........................................................................................................................10
    Rule 23(a)(4)......................................................................................................................10, 11
    Rule 23(b)...........................................................................................................................8, 12
    Rule 23(b)(3).......................................................................................................................11, 12
    Rule 23(e)............................................................................................................................1, 12
    Rule 23(f)...............................................................................................................................16

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Fulton County Employees' Retirement System ("Lead Plaintiff" or "Plaintiff") in this action respectfully requests that this Court grant final approval of the proposed settlement of $8.25 million (the "Settlement") with Defendants TETRA Technologies, Inc. ("TETRA" or the "Company"), Geoffrey M. Hertel, George M. McCarroll, Joseph M. Abell and Raymond D. Symens (the "Individual Defendants") (collectively, "Defendants"). The Settlement finally and completely resolves a class action lawsuit brought under the federal securities laws involving whether TETRA issued materially false and misleading statements and/or omitted to state material facts concerning TETRA's business and operations in violation of the Securities Exchange Act of 1934 between May 3, 2006 and October 16, 2007, inclusive (the "Class Period").[1]  The Settlement will benefit all persons that purchased the publicly traded common stock of TETRA during the Class Period, and were damaged as alleged in this action thereby.[2]

For the reasons set forth below and in the accompanying Declaration of Beth A. Kaswan in Support of Application for Final Approval of the Class Action Settlement, Class Certification, Award of Fees and Expenses, and Plan of Allocation (the "Kaswan Decl."), Lead Plaintiff submits that the Settlement is an outstanding recovery for the Class, and respectfully requests that the Court approve the Settlement and Plan of Allocation, and enter the proposed Order and Final Judgment accordingly.[3]  A separate Memorandum is being submitted in support of Lead Plaintiff's petition for an award of attorneys' fees and costs.

---

[1]  Certain of the Individual Defendants were added and dismissed during different stages of the lawsuit.  The Amended Consolidated Complaint dated August 26, 2008 (the "Complaint") contained a Class Period from November 3, 2006 to October 15, 2007, which Plaintiff sought to enlarge by approximately six months in a proposed amended complaint.  The enlarged period, from May 3, 2006 to October 16, 2007, inclusive, is hereinafter referred to as the "Class Period," in order to include all Plaintiff's claims within this settlement.

[2]  Excluded from the Class are Defendants and defined affiliates.

[3]  The background of this litigation and Lead Plaintiff's and Lead Counsel's efforts on behalf of the Class are set forth in detail in the Kaswan Decl., filed concurrently.

## PRELIMINARY STATEMENT AND BACKGROUND

The proposed Settlement represents an exceptional recovery for the Class. The Settlement resolves a lawsuit over whether TETRA and the Individual Defendants either recklessly or knowingly issued false and misleading statements concerning Maritech's (a TETRA subsidiary) dispute with its insurance carrier over coverage for damage to its oil and gas wells and physical property from the 2005 hurricanes, Rita and Katrina, and TETRA's reported first quarter 2006 ("1Q06") through second quarter 2007 ("2Q07") earnings.

Following the Court's decision on July 9, 2009 upholding in part and denying in part Defendants' motion to dismiss Plaintiff's Amended Consolidated Complaint, this case has been vigorously and aggressively litigated by all parties. Defendants, *inter alia*, moved to dismiss, hotly contested the scope of discovery, unsuccessfully sought sanctions from Plaintiff and vigorously opposed liability. Lead Plaintiff, *inter alia*, successfully stated a claim for relief, defeated Defendants' sanctions motions, undertook extensive discovery, including required motions to compel, reviewed hundreds of thousands of highly technical documents, took and analyzed numerous depositions, engaged experts and prepared for class certification, among other hotly contested matters. The issues are highly technical and complex and would involve sharply conflicting expert testimony. Establishing liability (including loss causation) and damages would have been difficult. Plaintiff, by its counsel, conducted numerous discussions and arm's-length negotiations with counsel for Defendants both informally and over the course of mediation with respect to a compromise and settlement of the Action with a view to settling the issues in dispute and achieving the best relief possible consistent with the interests of the Class.

Under these circumstances, the $8.25 million recovery for the Class represents an outstanding result. Indeed, not a single Class member has objected to the substantive terms of the Settlement or the substantial recovery obtained and the time period to object has now expired.

Additionally, Plaintiff's proposed Plan of Allocation is a fair and appropriate method for distributing the recovered funds to Class members. The Plan of Allocation incorporates when

2

Class members purchased their stock and when the alleged fraud was revealed.  The Plan of Allocation, which is set forth in the Notice of Pendency of Class Action and Proposed Settlement with Defendants, Motion For Attorneys' Fees and Settlement Fairness Hearing (the "Notice") was mailed to members of the Class and was available via the Internet at a dedicated settlement website, provides for the distribution of the Net Settlement Fund on a *pro rata* basis, based on a formula tied to individual claims *vis-a-vis* total claims.  There is no objection – Class member or otherwise – to the Plan of Allocation.  Finally, certification of the Class for settlement purposes is appropriate for the reasons set forth in Plaintiff's motion for preliminary approval, previously granted by the Court.  [Dkt. 147].

Plaintiff respectfully submits that the Settlement is worthy of immediate approval, that the proposed Plan of Allocation is equitable and just, and that each should be approved by the Court.

## **HISTORY OF THE LITIGATION**

### A.    **Background**

This is a securities class action brought on behalf of all purchasers of the publicly traded common stock of TETRA Technologies, Inc. ("TETRA" or the "Company") between May 3, 2006 and October 16, 2007, inclusive, against Geoffrey M. Hertel, George M. McCarroll, Joseph M. Abell and Raymond D. Symens (the "Individual Defendants") and TETRA (collectively the "Defendants") for violations of the Securities Exchange Act of 1934 (the "Exchange Act").

By this lawsuit, Plaintiff contended that Defendants misrepresented Maritech's (a TETRA subsidiary) dispute with its insurance carrier over coverage for damage to its oil and gas wells and physical property from the 2005 hurricanes, Rita and Katrina, and TETRA's reported first quarter 2006 ("1Q06") through second quarter 2007 ("2Q07") earnings by failing to timely recognize expense for the non-reimbursable performed and estimated future repairs, and issued 2007 earnings guidances that were false because of the looming and yet to be expensed repair costs.

The Complaint alleges that the truth leaked out through disclosures made on August 3, 2007, when the Company announced its 2Q07 results and modified its 2007 earnings guidance, and then again on October 16, 2007, when the Company withdrew its 2007 earnings guidance.

The Complaint alleges that the above misrepresentations had the effect of artificially inflating the price of TETRA's common stock during the Class Period and that, when the truth was revealed, the Class of TETRA common stock purchasers was damaged thereby. The Court, in its decision on the motion to dismiss the Complaint, held that certain statements about the Company's other business problems included in these two disclosures were not made with scienter, so that only a portion of the stock inflation could be shown to be caused by the fraud and be recoverable in damages.

**B.     Procedural History of the Litigation**

Beginning in March 2008, a number of related putative class actions arising under the federal securities laws were filed in this Court and were subsequently consolidated into the current lawsuit (the "Action"). On June 27, 2008, the Court appointed Fulton County Employees' Retirement System as Lead Plaintiff and appointed Scott+Scott LLP ("Scott+Scott") as Lead Plaintiff's Counsel.

Scott+Scott undertook an extensive informal investigation of the facts, obtaining information from a large number of former TETRA employees. An Amended Consolidated Complaint was filed on August 26, 2008, which alleged false and misleading statements relating to three areas of the Company's business: TETRA's Fluids Division, Maritech's oil and gas reserves, and Maritech's claims for hurricane insurance reimbursement. The Complaint alleged that, with respect to these three business areas, Defendants issued false and misleading press releases and other statements regarding the financial condition and business prospects of TETRA, in an alleged scheme to artificially inflate the value of TETRA's securities.

Thereafter, Defendants filed motions to dismiss the Action. On July 9, 2009, the Court denied (in part) and granted (in part) the motions to dismiss. As a result of this decision, the claims involving Raymond Symens were dismissed, and he was dismissed as a party. Shortly

after the July 9, 2009 decision, Plaintiff, by its counsel, began to actively pursue formal discovery from the Defendants and third parties, including from TETRA's auditor, insurance adjuster, and various stock analysts.

After over two years of investigating and litigating this Action, Plaintiff and its counsel developed an in-depth understanding of the strengths and weaknesses of the claims, as well as the viability of the defenses put forward by Defendants.  Counsel's extensive investigation and discovery efforts have included, *inter alia*, a review and analysis of:  (i) public filings by TETRA with the SEC; (ii) Defendants' conference calls and announcements; (iii) wire and press releases published by and regarding TETRA; (iv) securities analysts' reports and advisories about the Company; (v) other public documents and information regarding TETRA; (vi) testimony elicited and documents produced in Maritech's litigation with its insurers in state court (the "Insurance lawsuit"); (vii) thousands of documents produced in this case; (viii) depositions taken in this case; (ix) consultations with forensic accountants and expert economists; and (x) research of the applicable law with respect to Lead Plaintiff's claims and the potential defenses thereto.

Lead Counsel reviewed well over a hundred thousand pages of testimony and documents, and worked closely with its experts to develop its accounting and loss causation approaches. Plaintiff reviewed thousands of pages of testimony and documents produced in the related Insurance lawsuit filed by Maritech against its insurers for reimbursement of its hurricane repair costs.   In preparation for Plaintiff's motion for class certification, Plaintiff engaged expert economists to develop detailed event studies and economic analyses concerning loss causation and market efficiency.  Before the settlement was reached, Lead Counsel took depositions and/or reviewed testimony from the Insurance lawsuit for all the Individual Defendants, as well as several other critical witnesses.   This testimony fully disclosed both the strengths and weaknesses in Plaintiff's case, and highlighted the many technical complexities that would be involved in explaining this case to a jury.   The parties engaged in extensive settlement negotiations and a full-day mediation, utilizing the assistance of special mediator, Robert A. Meyer, Esq., to obtain a compromise and settlement of the case against Defendants with a view

to settling the issues in dispute and achieving the best relief possible consistent with the interests of the Class. From the motion practice in this case, this Court knows all too well the intensity with which this case was litigated, and the factual and legal complexities which Plaintiff faced in establishing its claims.

## SUMMARY OF THE SETTLEMENT

### A.      The Settlement

Defendants have agreed to pay $8.25 million in cash in full settlement of Plaintiff's claims against it. The settlement fund, less any attorneys' fees and expenses and notice, administrative and tax expenses (the "Net Settlement Fund") will be distributed among those injured Class members who have not requested exclusion from the Class and who submit a timely and valid Proof of Claim under the procedures set forth in the Settlement Notice. The Settlement resolves the claims concerning whether Defendants issued false statements and misled investors about TETRA's business and operations during the Class Period.

### B.      Plaintiff's Recovery Under the Settlement and Plan of Allocation

Under the Plan of Allocation, the claims administrator will determine each "Authorized Claimant's" *pro rata* share of the Net Settlement Fund based on his or her "Recognized Claim" from transactions during the Class Period based on the Plan of Allocation. For purposes of the Settlement, "Recognized Claims" are calculated as follows:

(a)     For a TETRA share purchased between May 3, 2006 and December 29, 2006 (trading day prior to January 3, 2007), inclusive, and held to the end of the Class Period, the Recognized Loss Amount is the lesser of:

   (i)      purchase price paid minus $16.98 (the "90-day lookback value" calculated as the mean closing price of a TETRA share during the 90 days following the Class Period, *i.e.*, October 16, 2007 through January 14, 2008) or

   (ii)     the amount of artificial inflation per TETRA share on the date of purchase −$0.08 per share as appears in the table above.

(b)     For a TETRA share purchased between May 3, 2006 and December 29, 2006 (trading day prior to January 3, 2007), inclusive, held to August 3, 2007 or thereafter, and sold during the Class Period, the Recognized Loss Amount is zero because inflation received at sale was equal to or greater than inflation at purchase.

(c)    For a TETRA share purchased between January 3, 2007 and August 2, 2007, inclusive, and held to the end of the Class Period, the Recognized Loss Amount is the is the lesser of:

      (i)    purchase price paid minus $16.98 or

      (ii)    the amount of artificial inflation per TETRA share on the date of purchase--$0.69 per share as appears in the table above.

(d)    For a TETRA share purchased between January 3, 2007 and August 2, 2007, inclusive, held to August 3, 2007 or thereafter, and sold during the Class Period, the Recognized Loss Amount is the difference between $0.69 inflation at purchase and the amount of inflation at date of sale as set forth in the table above.

(e)    For a TETRA share purchased on or after August 3, 2007 and held to October 16, 2007 or thereafter, the Recognized Loss Amount is the lesser of:

      (i)    purchase price paid minus $16.98 or

      (ii)    the amount of artificial inflation per TETRA share on the date of purchase − $0.64 per share as appears in the table above.

The Plan of Allocation and the "Recognized Claim" formulae are prepared in order to fairly allocate the recovery among Class members. Thus, investors who purchased TETRA stock during the Class Period qualify for recovery under the Settlement. As detailed in the Plan of Allocation with respect to common stock purchases, a Claimant's Recognized Claim is based on Plaintiff's contention of the estimated artificial inflation in the price paid for shares of TETRA common stock as determined by Plaintiff's damages expert. This estimated inflation is the excess amount that Class members allegedly paid, over fair market value, for their stock.

Under the Plan of Allocation, checks will be distributed to Authorized Claimants after the Court has finally approved the Settlement and after all claims have been processed. If any funds remain in the Net Settlement Fund after the checks are distributed by reason of uncashed distributions the balance will be distributed as ordered by the Court on motion of the Class Plaintiff.

## CLASS CERTIFICATION

One of this Court's functions in reviewing a proposed settlement of a class action is to determine whether the action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. *See Amchem Prods, Inc. v. Windsor*, 521 U.S. 591 (1997). *See, e.g., In*

re Enron Corp. Sec. and ERISA Litigations, No. H-01-3624, 2003 WL 22494413, at *2 (S.D. Tex. July 24, 2003) (preliminarily approving settlement and conditionally certifying class for settlement purposes). Rule 23(a) sets forth four prerequisites to class certification, which are referred to in the short-hand as: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. The class must also meet one of the three requirements of Rule 23(b). *See* Fed. R. Civ. P. 23. The proposed Class is defined in the Stipulation as follows:

> The Class is defined as all persons who purchased the publicly traded common stock of TETRA between May 3, 2006 and October 16, 2007, inclusive ("Class Period"), and were damaged as alleged in the Action thereby. Excluded from the Class are Defendants, all officers, directors, partners and affiliates of TETRA at all relevant times, members of Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest, and all shares of TETRA stock awarded or acquired, directly or indirectly, by any of them.

"[I]n securities cases, . . . 'when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward.'" *In re Initial Public Offering Sec. Litig.,* 227 F.R.D. 65, 90 (S.D.N.Y. 2004).[4] *See also City Partnership Co. v. Jones Intercable, Inc.,* 213 F.R.D. 576, 581 (D. Colo. 2002) (noting that securities claims are "particularly well suited for class action status because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation"). This Action is no exception and Lead Plaintiff submits that the Class satisfies each of these requirements.

## A.    Numerosity

First, Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. To meet this requirement, a plaintiff is not required to show the exact number of class members at the time of class certification. In addition, the court may also consider whether members of the proposed class are geographically dispersed. *Barrie v. Intervoice-Brite, Inc.,* No. 3:01-CV-1071-K, 2006 WL 2792199, at *13 (N.D. Tex. Sept. 26, 2006). Numerosity is "generally

---

[4]    Unless otherwise noted, all citations are omitted and emphasis is added.

assumed to have been met in class action suits involving nationally traded securities." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1039 (5th Cir. 1981).

Here, TETRA common stock was actively traded on the Nasdaq throughout the Class Period, and Lead Plaintiff believes that beneficial holders of TETRA common stock number in the hundreds or thousands and are geographically located throughout the United States, making joinder of all Class members impractical. Thus, numerosity is easily met.

**B.      Commonality**

Second, Rule 23(a)(2) is satisfied where there are questions of law or fact common to the class. *In re Firstplus Fin. Group, Inc. Sec. Litig.*, No. 3:98-CV-2551-M, 2002 WL 31415951, at *3-*4 (N.D. Tex. Oct. 28, 2002). Commonality does not require a showing that the interests and claims of the class members are identical; it requires only that "there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Forbush v. J.C. Penny Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993). Here, questions which are common to the proposed Class include:

(i)      whether the federal securities laws were violated by Defendants' acts as alleged in the Complaint;

(ii)      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and finances of TETRA;

(iii)      whether Defendants knew or recklessly disregarded that their Class Period statements were materially false and misleading;

(iv)      whether the price of TETRA common stock was artificially inflated due to the Defendants' statements during the Class Period; and

(v)      to what extent the members of the Class have sustained damages and the proper measure of damages.

Securities fraud actions containing common questions such as those listed above have repeatedly been held to be prime candidates for class certification. *See, e.g., In re Elec. Data Sys. Corp. Secs. Litig.*, 226 F.R.D. 559, 564 (E.D. Tex. 2005), *aff'd,* 429 F.3d 125 (5th Cir. 2005);

*Firstplus*, 2002 WL 31415957, at *4. In short, because the core complaint of all Class members is that they purchased or acquired TETRA common stock at artificially inflated prices, the commonality requirement of Rule 23(a)(2) is satisfied.

**C.    Typicality**[5]

Third, the typicality requirement of Rule 23(a)(3) is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members. *See Amchem Prods.*, 521 U.S. at 625 (common issues test readily met in securities fraud cases). As with commonality, the test for typicality is not demanding. *See Elec. Data Sys. Corp.*, 226 F.R.D. at 565. Typicality does not require a complete identity of claims, but rather, is satisfied when the representative plaintiff's claims arise out of the same event or course of conduct as the other class members and are based on the same legal theory. *Firstplus*, 2002 WL 31415951, at *4. *See also Elec. Data Sys. Corp.,* 226 F.R.D. at 565 ("[f]actual differences do not defeat typicality if the claims arise from a similar course of conduct and share the same legal theories").

Lead Plaintiff's claims and the claims of the prospective Class arise out of the same allegedly unlawful conduct by the Defendants, and the proof Lead Plaintiff would be required to present to establish its claims would also prove the claims of the rest of the Class. *See In re Universal Access, Inc. Sec. Litig.*, 209 F.R.D. 379, 386 (E.D. Tex. 2002). Therefore, Lead Plaintiff's claims are typical of the claims of the Class and thus, Rule 23(a)(3) is satisfied.

**D.    Adequacy**

Fourth, Rule 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class they seek to represent. There are two prongs to this requirement: (i) the representatives must have interests that are not antagonistic to the interests of other members of the class; and (ii) the representatives must have retained attorneys who are qualified, experienced and able to conduct the litigation. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Barrie*, 2006 WL

---

[5]    The U.S. Supreme Court has recognized that the commonality and typicality analyses "tend to merge." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

2792199, at *13.  Thus, this inquiry lies with the interests of the class representative, and the competency of counsel.

Here, as described above, Lead Plaintiff – the proposed Class Representative – has claims that are typical of and coextensive with those of the Class.  Lead Plaintiff, like all Class members, purchased the common stock of TETRA at alleged artificially inflated prices during the Class Period as a result of Defendants' alleged materially false and misleading statements, and was allegedly damaged thereby.  Further, Lead Plaintiff has retained the law firm of Scott+Scott – a firm that is highly experienced in securities class action litigation and has successfully prosecuted many securities and other complex class actions in courts throughout the United States.  Thus, Lead Plaintiff is an adequate representative of the Class, and its counsel is qualified, experienced and capable of prosecuting this Action, in satisfaction of Rule 23(a)(4).

**E.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3) – Common Questions of Law Predominate and a Class Action Is Superior to Multiple Individual Actions**

**1.    Common Questions Predominate Over Any Questions Affecting Only Individual Members**

To ensure that the class action is more efficient than individual actions, Rule 23(b)(3) requires that common issues predominate over issues that are particular to individual class members.  *See Amchem Prods.*, 521 U.S. at 625 ("predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of antitrust laws").  To satisfy the predominance requirement, Lead Plaintiff relies on the fraud-on-the-market theory of securities fraud and the "class-wide presumption of reliance" supported by this theory.  As the Supreme Court found in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), reliance on the materially misleading statements or omissions of a defendant is presumed (and thus predominates over questions of individual reliance) if a plaintiff shows that:  "(1) the defendant made public material misrepresentations, (2) the defendant's shares were traded in an efficient market, and (3) the plaintiffs traded shares between the time the misrepresentations were made and the time the truth

was revealed." *Greenberg v. Crossroads Sys., Inc.,* 364 F.3d 657, 661 (5th Cir. 2004) (citing *Basic*, 485 U.S. at 247, n.27).

Here, Rule 23(b)(3)'s predominance requirement is easily satisfied.

### 2.    The Class Action Is Superior to Other Methods of Adjudication

In addition, Rule 23(b)(3) requires that the Court determine whether a class action is superior to other methods of adjudication.  Here, little question exists that a class action is superior to other available methods. But for this method of adjudication, there would be hundreds, if not thousands, of individual cases.   "Class actions are considered superior when individual actions would be wasteful, duplicative, present managerial difficulty and be adverse to judicial economy." *Barrie,* 2006 WL 2792199, at *11.  *See Gibb v. Delta Drilling Co.,* 104 F.R.D. 59, 71 (N.D. Tex. 1984) ("Plainly, many small investors, purchasers of 100 or 200 shares, while clearly not without means, have not suffered sufficient damages to warrant an individual action.  Those purchasers will have no viable recourse if this [class certification] motion is denied.").  Further, "[t]he utility of the class action to cases involving the securities laws has been repeatedly recognized." *Id.*

In light of the foregoing, all of the requirements of Rule 23(a) and (b) are satisfied.  Thus, there are no issues that would prevent the Court from certifying this Class for settlement purposes and appointing Lead Plaintiff as the Class Representative.

### THE PROPOSED SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

The substantive terms of the Settlement and the method used to arrive at the Settlement, as well as the proposed Plan of Allocation are fair, reasonable and adequate and should be approved by the Court.

### A.    The Fifth Circuit Favors Settlement of Class Actions and Presumes Fairness of Settlements Negotiated and Supported by Experienced and Competent Counsel

Under Federal Rule of Civil Procedure 23(e), the Court must approve any settlement that would result in dismissal of a class action.  Fed. R. Civ. P. 23(e).  The standard for reviewing a proposed settlement of a class action is whether the proposed settlement is "fair, adequate and

reasonable," and has been entered into without collusion between the parties. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). *See also In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 207 (5th Cir. 1981), *aff'd,* 659 F.2d 1322 (5th Cir. 1981). The Fifth Circuit has consistently held that settlements "'are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller v. Republic Nat'l Life  Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977). *See also Corrugated Container*, 643 F.2d at 207 (noting "strong judicial policy favoring settlement of disputes"). In addition, "'there is an overriding public interest in favor of settlement [of class actions],'" because such suits "have a well deserved reputation as being most complex." *Purdie v. Ace Cash Express, Inc.*, No. 3:01- CV-1754, 2003 WL 22976611, at \*4 (N.D. Tex. Dec. 11, 2003). A court "generally will consider the facts of a settlement in a light favorable to promoting settlements." *McNary v. Am. Sav. & Loan Ass'n*, 76 F.R.D. 644, 648 (N.D. Tex. 1977).

Moreover, where experienced counsel have negotiated a settlement at arm's length, courts accord class counsel's opinion great weight, and presume the compromise is fair and reasonable. *U.S. v. Texas Educ. Agenc*y, 679 F.2d 1104, 1108 (5th Cir. 1982); *Murillo v. Texas A&M Univ. Sys*., 921 F. Supp. 443, 445 (S.D. Tex. 1996) (citing 2 Alba Conte, *Newberg on Class Actions* § 11.42 (3d ed. 1995)); 3B James W. Moore, *et al.*, *Moore's Federal Practice* ¶23.1.24[2] (2d ed. 1992). Thus, the court "is entitled to rely upon the judgment of experienced counsel . . . [and] [i]ndeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330 (citing *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975)).

Here, the Settlement was reached by experienced, fully-informed counsel after significant investigation by Lead Counsel and vigorous arm's-length negotiations. Thus, the Court should accord significant weight to Lead Counsel's opinion in favor of the Settlement and presume that the Settlement is fair and reasonable. In addition, as set forth below, the six factors considered by the Fifth Circuit in evaluating settlements demonstrate that the Settlement is an excellent

recovery for the Class and support the Court's approval of the Settlement. *See Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982) (describing factors).

**B.   The Fifth Circuit's Six Factors for Evaluating Settlements Mandate Approval of This Settlement**

The Fifth Circuit considers six factors in determining whether to approve a proposed settlement:

> (1) [T]he existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).   This Settlement squarely satisfies these six criteria.

**1.   The Settlement Was Not the Product of Fraud or Collusion**

Courts in this jurisdiction presume that settlement negotiations are free from fraud and collusion unless affirmative evidence indicates otherwise. *Purdie*, 2003 WL 22976611, at *5 (rejecting claim of fraud or collusion because objector pointed to no evidence in record supporting her claim). In addition, if the terms of the proposed settlement are fair, courts generally will assume the negotiations were proper and arm's length. *See Corrugated Container*, 643 F.2d at 212.

This present Settlement is clearly the result of arm's-length negotiations.   Indeed, settlement negotiations were intense and took place during a formal face-to-face mediation before an experienced mediator.   During negotiations, the parties presented their respective views regarding the merits of the Action, available defenses, the evidence and damages analyses. In support of their positions, each side drafted extensive and detailed mediation statements. *See, e.g., In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *4 (S.D.N.Y Sept. 29, 2003) (stating, in approving settlement, fact that settlement was reached with

assistance of a private mediator experienced in complex litigation was proof settlement was fair and reasonable).  In addition, Lead Plaintiff entered into settlement negotiations and determined to resolve the Action only after, *inter alia*, the parties fully briefed (and won in part/lost in part) motions to dismiss, extensive discovery, including motions to compel and prepared for (but did not file) Plaintiff's class certification motion.

Furthermore, Counsel has many years of experience in litigating complex litigation and class actions and has negotiated numerous other settlements.  Because there is no evidence – or even suggestion – that the Settlement is the product of collusion between the parties, the first *Reed* factor supports approval of the Settlement.

### 2.  The Complexity, Expense and Likely Duration of the Litigation All Support the Settlement

The second *Reed* factor, the complexity, expense and likely duration of any litigation, also favors approval of the Settlement in this Action.  To begin with, there can be no question that any potential trial would be costly.  Indeed, the expense of trial can be staggering and carries with it the "distinct possibility" that the trial will result in no recovery.  *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651 (N.D. Tex. 1978).  *See also Strougo ex rel. Brazilian Equity Fund v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'[i]t is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members'") (quoting *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993)).

The claims advanced by Lead Plaintiff in this Action involve numerous complex legal and factual issues that would require further and extensive fact discovery, including numerous depositions, and detailed, costly expert discovery and testimony on the subject of causation, materiality, scienter and damages, which would add considerably to the expense and duration of the litigation.  The complexity, expense and likely duration of any litigation, also favor approval of the Settlement in this Action.  The accounting issues are complex and the expert analysis incorporated many of these complexities.  Because these issues would first be litigated at the

class certification stage, even if Plaintiff prevailed, Defendants would likely seek an interlocutory appeal of that result under Fed. R. Civ. P. 23(f), a time-consuming process at best. Then there would be hard-fought motions for summary judgment and an expensive trial. The expert fees incurred to date have already cost hundreds of thousands of dollars. Indeed, the expense of trial would likely be staggering and carries with it the "distinct possibility" that the trial would result in no recovery.

If the Class was certified and the claims survived summary judgment, preparation for trial, including the filing of motions *in limine* (*e.g.,* inevitable Daubert motions), would require significant time and attention from all parties and the Court. The trial itself would then be potentially lengthy and surely complex, involving the presentation of evidence related to each of the elements of the claims, with respect to both liability and damages, as discussed above.

Furthermore, whatever the outcome of trial, a second inevitable appeal to the Fifth Circuit would be brought by Defendants who have spared no expense in litigating this case. At the very least, if this case did not settle, the Class's recovery would be delayed for many, many years. Conversely, settlement now results in a substantial and relatively immediate recovery, without the attendant risks, delay and further litigation expenses, including for expert discovery, summary judgment, trial and post-trial proceedings. Thus, this factor weighs heavily in favor of approval of the Settlement.

### 3.     The Stage of Proceedings and Discovery Completed Gave the Parties Sufficient Information to Negotiate an Adequate and Reasonable Settlement

This factor focuses on whether the parties had sufficient information to conduct an informed negotiation for a settlement that adequately reflects the merits of the case. Courts in this jurisdiction generally recognize that it is not necessary that plaintiffs complete formal discovery in order to negotiate a fair settlement. *Corrugated Container*, 643 F.2d at 211. Rather, "[t]he overriding theme of [Fifth Circuit] case law is that formal discovery is not necessary as long as (1) the interests of the class are not prejudiced by the settlement negotiations and (2) there are substantial factual bases on which to premise settlement." *Newby v. Enron*, 394

F.3d 296, 306 (5th Cir. 2004).  Further, the trial court "may legitimately presume that counsel's judgment [that it has the information necessary to evaluate a settlement] is reliable."  *Corrugated Container*, 643 F.2d at 211.

Here, Lead Counsel litigated to a stage in the proceedings where they could make a reasoned and informed determination that the risks of moving forward and being able to secure the amount of any potential judgment outweighed the opportunity to obtain a larger recovery, and that the Settlement provides an excellent recovery for the Class.  Even prior to filing the operative Complaint, Counsel conducted an extensive informal investigation, including a review of TETRA's public filings, annual reports, press releases, and other public statements, and interviews of former employees and other percipient witnesses.  The information obtained from this extensive investigatory process enabled Lead Plaintiff and this firm to set forth the allegations of fraud, including identifying specific practices and transactions alleged to be fraudulent.  Notably, Counsel undertook all of the investigative efforts described above without the benefit of any formal discovery due to the Private Securities Litigation Reform Act of 1995's ("PSLRA") discovery stay.  As described above, once the Complaint was sustained in part, extensive formal discovery and expert analysis ensued.

As a result of these efforts, Lead Plaintiff and this firm obtained a full understanding of the legal and factual issues surrounding this case, knowledge sufficient to negotiate an excellent Settlement, and to confirm that it is fair, reasonable, and adequate.

**4.    The Probability of Success on the Merits, the Possible Range of Recovery and the Certainty of Damages, Support Approval of the Settlement**

In analyzing these factors, the Court is guided by two principles: "'[t]he settlement terms should be compared with the likely rewards the class would have received following a successful trial' and 'the strength of the case for plaintiffs must be balanced against the amount offered in settlement.'"  *In re Lease Oil Antitrust Litig.* (*No. II*), 186 F.R.D. 403, 433 (S.D. Tex. 1999).

### a.   Proving Liability Would Be Difficult

Because the Complaint was sustained only in part, Plaintiff faced substantial risks in going forward with litigating this case. *See, e.g.*, *Schwartz v. TXU Corp.*, No. 3:02-cv-2243, 2005 WL 3148350, at *33 (N.D. Tex. Nov. 8, 2005) (finding approximately 90% of Fifth Circuit PSLRA pleading decisions have upheld dismissal of complaints and recognizing case was risky when lead counsel accepted retention*); Garza v. Sporting Goods Properties*, *Inc.,* No. SA-93-CA-1082, 1996 WL 56247, at *33 (W.D. Tex. Feb. 6, 1996) (factors such as financial burden on counsel and time demands of litigating class action of this size and complexity have caused cases to be considered "undesirable").   In addition to the usual difficult task of establishing Defendants' fraudulent state of mind, this case involved the daunting problem of establishing which simultaneous announcements by the Company of business problems caused the losses in the price of its stock, and by how much.   There were also difficult legal and evidentiary questions raised by recent and at times conflicting Fifth Circuit authorities addressing loss causation and its implications for class certification.

Indeed, here, Defendants had and certainly would argue that Plaintiff could not establish falsity, scienter or loss causation, and that most of TETRA's stock losses were attributable to other factors, including with respect to the theories in the Complaint that had not been sustained on the motion to dismiss.   Moreover, both the accounting and economic evidence would be difficult for a jury to grasp.   And Defendants had already advised the Court to expect a vigorous evidentiary battle on loss causation at the class certification stage.   Defendants would argue that Lead Plaintiff could not establish loss causation due to Defendants' assertion that neither the August 3, 2007 nor the October 16, 2007 disclosures were "corrective" in nature or revealed the alleged "truth."   As became clear in the mediation, these matters are heavily contested by experts for both Plaintiff and Defendants.   Were the Action to proceed, Defendants would also vigorously argue that the evidence failed to demonstrate scienter, particularly with respect to the alleged accounting violations.   Indeed, Defendants argued that the insurance claims had not even

been "denied," and that a later settlement of the Insurance lawsuit proved that the hurricane repairs always were reimbursable, so that the challenged statements were not false.

### b.   Proving Causation/Damages Would Be Difficult

Even if Lead Plaintiff succeeded on each and every one of the liability issues and could overcome Defendants' numerous defenses, Plaintiff faced risks in proving significant damages, especially considering Defendants were prepared to vigorously contest the amount of the losses attributable to the particular theory of the case that had been sustained.  Defendants likely would present alternative models to those presented by Plaintiff for any damages issues, including the appropriate economic model for determining the amounts by which TETRA common stock allegedly was artificially inflated (if at all) during the Class Period, the effect of various market forces influencing the trading prices of TETRA common stock at various times  during the Class Period and the extent to which other business problems at TETRA influenced the trading prices of TETRA common stock at various times during the Class Period.

Although Plaintiff would present expert testimony to support its damages calculations, it is impossible to predict how a jury would weigh competing experts' testimony.  *See, e.g., Streber v. Hunter*, 221 F.3d 701, 726 (5th Cir. 2000), *reh'g denied en banc*, 233 F.3d 576 (5th Cir. 2000) (stating jury can believe whichever expert it finds more credible); *In re Zonagen, Inc. Secs. Litig*, 322 F. Supp.2d 764, 782 (S.D. Tex.  2003) (granting summary judgment where plaintiffs' expert report was insufficient to establish loss causation as a matter of law); *In re Warner Commc'ns. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions" for the class.). The determination of damages would likely be reduced at trial to a "battle of the experts" in which the possibility exists that a jury would be swayed by Defendants' experts, who would seek to minimize or eliminate the amount of Plaintiff's and the Class's losses by showing that the

losses were attributable to factors other than particular misstatements and omissions alleged in the Complaint that were sustained at the pleading stage.

The calculation of damages would also be constrained by the fact that the losses attributable to the non-reimbursable repair costs were "non-recurring."  In light of these obstacles and risks, the $8.25 million recovery is an excellent result.

### 5.    The Settlement Is an Excellent Result

The range of possible recovery strongly supports the Settlement Lead Plaintiff has been able to obtain for the Class.  Pursuant to the Settlement, the Class will recover $8.25 million plus accrued interest, net of administrative costs and attorneys' fees and expenses.  This recovery is an excellent result for the Class, especially when viewed in light of the risks of continued litigation.  *See Parker*, 667 F.2d at 1210 & n.6 (agreeing with the Second Circuit that a settlement that represented 12% of estimated damages was adequate); *Lease Oil Antitrust Litig.,* 186 F.R.D. at 435 n.47 (noting various studies showing recoveries of between 4% and 14% of damages).

### 6.    Class Counsel, Class Representatives and Absent Class Members Support the Settlement

With respect to the sixth factor enumerated by the Fifth Circuit in *Reed*, Lead Counsel, Lead Plaintiff, and the Class members favor approval of the Settlement.  Indeed, while over 45,000 Notice Packets and claim forms were issued to Class members and/or Nominee brokerage firms to participate in the recovery, not a single Class member submitted comment or objection with regard to any term of the Settlement (though one person unsuccessfully attempted to intervene to raise collateral matters).  The Claims Administrator has not received any objections or requests for exclusion.  See Declaration of Joni Brown (attached to the Kaswan Decl. as Ex. A).  Thus, the claims response has been overwhelmingly positive, and, as stated above, the fact that the Settlement was negotiated by experienced counsel at arm's-length entitles counsels' opinion – in favor of the Settlement – to great weight.  Thus, this factor should weigh

20

particularly heavily in the Court's analysis.  *Texas Educ. Agency*, 679 F.2d at 1108; *Murillo,* 921 F. Supp. at 445 (citing *Newberg & Conte*, § 11.42).  *See also Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 530 (N.D. Miss. 2003) (court entitled to rely on opinion of experienced counsel in evaluating settlement).

## THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

If the Court approves the proposed Settlement, the Settlement amount, less attorneys' fees and expenses and administrative costs, will be distributed to members of the Class who have submitted valid proofs of claim according to the Plan of Allocation set forth in the Notice.

The standard for approval of a plan of allocation is the same as the standard for approving the Settlement:  whether the plan is "'fair, adequate and reasonable and is not the product of collusion between the parties.'"  *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228,  238 (5th Cir. 1982).  This analysis is to be "'informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement.'"  *Id*.  Further, a plan of allocation that has been negotiated by, and is recommended by, experienced counsel, is generally considered fair and reasonable.  *See, e.g., Indep. Energy Holdings*, 2003 WL 22244676, at *5 (citing *In re Am. Bank Note Holographics, Inc., Sec. Litig.,* 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001)).  Not a single Class member has objected to the Plan of Allocation.

## CONCLUSION

This Settlement is the result of over two years of aggressively prosecuted and investigated securities litigation, involving complex actuarial, accounting and damages issues that would have been extremely difficult for a jury to grasp.  The $8.25 million recovery was obtained after two mediation attempts and represents an excellent result in settlement of the Class's claims.  For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the Settlement as fair, reasonable and adequate.

Dated: September 20, 2010

Respectfully submitted,

By:   /s/ David R. Scott
**SCOTT+SCOTT LLP**
David R. Scott (*pro hac vice*)
Amanda F. Lawrence (*pro hac vice*)
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel:  (860) 537-5537
Fax: (860) 537-4432

**SCOTT+SCOTT LLP**
Beth A. Kaswan (*pro hac vice*)
500 Fifth Avenue, 40th Floor
New York, NY 10110
Tel:  (212) 223-6444
Fax: (212) 223-6334

*Attorneys for Fulton County Employees'
Retirement System and Lead Counsel*

Theodore C. Anderson III
**KILGORE & KILGORE**
3109 Carlisle
Dallas, TX 75204
Tel:  (214) 969-9099
Fax: (214) 953-0133

*Liaison Counsel*

## <u>CERTIFICATE OF SERVICE</u>

On September 20, 2010, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case files ("ECF") system of the Court.  Notice of this filing will be sent to all parties by operation of the ECF system.  Parties may access this filing through the ECF system.

<u>   /s/ David R. Scott            </u>
David R. Scott (*pro hac vice*)
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel:  (860) 537-5537
Fax: (860) 537-4432


*Lead Counsel for Lead Plaintiff*